UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

No. 15-cv-982 (RJS)

---

DANIEL KRUPINSKI,

Plaintiffs,

VERSUS

LABORERS EASTERN REGION ORGANIZING FUND,

Defendant.

---

OPINION AND ORDER
September 30, 2016

---

RICHARD J. SULLIVAN, District Judge:

Plaintiff Daniel Krupinski ("Krupinski") brings claims for unpaid wages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), and for statutory damages under New York's Wage Theft Prevention Act ("WTPA"), against his former employer, Defendant Laborers Eastern Region Organizing Fund ("LEROF"). Now before the Court are (1) Defendant LEROF's motion for summary judgment (Doc. No. 26), and (2) Plaintiff Krupinski's cross-motion for partial summary judgment (Doc. No. 32), under Federal Rule of Civil Procedure 56. Both motions turn, principally, on whether Krupinski was a "bona fide administrative employee" exempt from the overtime provisions of the FLSA and the NYLL. For the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

I. BACKGROUND

A. Facts

Daniel Krupinski is a former employee of LEROF, a non-profit labor organization associated with the Laborers International Union of North America ("LIUNA").[1] (Def.

---

[1] The following facts are generally taken from Defendant's Local Civil Rule 56.1 Statement (Doc. No. 28 ("Def. 56.1")), Plaintiff's Counterstatement (Doc. No. 33 ("Pl. 56.1 Counter")), the declarations submitted in support of and in opposition to Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment, and the exhibits attached thereto (Doc. Nos. 29–30, 34–35). Unless otherwise noted, where one party's 56.1 Statement or Counterstatement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding the parties' cross-motions, the Court also considered

56.1 ¶ 1.) LIUNA, a labor union that represents thousands of members in the construction industry, has established "nationally-recognized labor-management funds to promote a skilled and productive workforce, create a safe and healthy work environment, and work collaboratively with project owners, contractors, and government officials to promote the union construction industry." (*Id.* ¶¶ 2–3.) LEROF was formed in 1997 to serve as LIUNA's first regional organizing fund for the geographic territory of New York City, Long Island, New Jersey, and Delaware. (*Id.* ¶¶ 4, 6.) LEROF's "core mission is to organize non-union workers to increase membership for the local unions [in its geographical territory] and thus increase market share for LIUNA as a whole." (*Id.* ¶¶ 4–5; *see also id.* ¶ 7.) LEROF carries out its mission by organizing workers, which "entails educating [them] about the benefits of union membership and campaigning to have workers elect to join LIUNA." (*Id.* ¶ 8.)

LEROF employs a staff of about fifty organizers to run its organizing campaigns. (*Id.* ¶ 10; *see also id.* ¶¶ 9–10 ("The power of LEROF rests in the skills and talents of members who actively participate in organizing campaigns.").) From most junior to most senior, LEROF's five employee positions are: (1) "Volunteer Organizer," (2) "Organizer I," (3) "Organizer II," (4) "Lead Organizer," and (5) "Coordinator" (collectively, "Organizers"). (*Id.* ¶ 11.) Volunteer Organizers are hired "to work on a specific campaign for a specific period of time" (Doc. No. 30-3 at 6) and are paid a bi-weekly salary plus benefits (Def. 56.1 ¶ 14). All other Organizers work 35 hours or more per week (Doc. No. 30-3 at 6) and are also paid a bi-weekly salary plus benefits (Def. 56.1 ¶ 13). According to LEROF's job descriptions, all Organizers' duties "generally include, but are not limited to: house calling non-union workers; house calling union workers; [performing] committee work; assisting in setting up campaigns; conduct[ing] meetings with workers; mobiliz[ing] and empower[ing] workers; participat[ing] in corporate campaign activities; public speaking; information gathering; rallying; picketing; and leafleting." (*Id.* ¶ 12; *see also* Doc. No. 30-1.) LEROF's employee manual – a copy of which Krupinski apparently reviewed and signed on January 23, 2012 (*see* Doc. No. 30-3 at 15) – states that Organizers are "exempt employees" under the FLSA (*id.* at 7).

Krupinski, a graduate of Berkeley College with a bachelor's degree in international business, was employed by LEROF as an Organizer from approximately June 2010 to April 2014. (Doc. No. 29-1 ("Pl. Depo.") at 48:1–3, 48:11; Def. 56.1 ¶¶ 28–29, 70.) From roughly June 2010 to February 2012, Krupinski worked as a Volunteer Organizer. (Def. 56.1 ¶ 29.) He was then promoted to Organizer I (*id.*), and in early 2013 he was promoted again to Organizer II (Doc. No. 34-3 at 60:13–18). Krupinski was terminated in April 2014. (Def. 56.1 ¶ 70.)

Krupinski's duties as an Organizer generally corresponded with those listed in LEROF's job description. (*Id.* ¶ 44; Pl. Depo. at 23:21–24:23.) Krupinski's primary objective was to "[m]otivate," "[e]ducate," and "[t]rain" construction workers and convince non-union workers to join LIUNA,

---

Defendant's memorandum of law in support of its motion for summary judgment (Doc. No. 27 ("Def. Mem.")), Plaintiff's memorandum of law in support of his cross-motion for partial summary judgment and in opposition to Defendant's motion (Doc. No. 36 ("Pl. Mem.")), Defendant's reply in further support of its motion and in opposition to Plaintiff's cross-motion (Doc. No. 37 ("Def. Reply")), and Plaintiff's reply in further support of his cross-motion and in opposition to Defendant's motion (Doc. No. 38 ("Pl. Reply")).

thereby increasing LIUNA's market share. (Def. 56.1 ¶ 46 (quoting Pl. Depo. at 29:1, 29:6); *see also* Pl. Depo. at 29:7–8 (trying to improve the market share was Krupinski's "job almost . . . every day").) Krupinski's day-to-day duties consisted mainly of "fieldwork" that entailed organizing and educating non-union workers (Def. 56.1 ¶¶ 45, 55, 57), speaking with the public about LIUNA's goals (*id.* ¶ 59), communicating with "contractors/owners/management" (Doc. No. 30-2 at 4), conducting house calls to recruit non-union workers (Def. 56.1 ¶¶ 49, 67–68), assessing targets for house calls (*id.* ¶¶ 50, 66), and, "most notably, conducting job site actions at non-union worksites" (Def. Mem. at 15; *see also* Def. 56.1 ¶ 56; Pl. Depo. at 38:22–24).

Job site actions occupied a significant portion of Krupinski's time as an Organizer. (Def. 56.1 ¶ 56.) Krupinski participated in both "rat actions" and "casket actions." (*Id.*) Rat and casket actions are essentially demonstrations conducted at non-union worksites, using either an inflatable rat or a coffin as a symbol of protest. (*Id.* ¶¶ 56–57.) The purpose of rat and casket actions is to "[b]ring[] attention" to companies that provide "substandard" working conditions and to put pressure on them to change unsafe practices, pay their employees good wages and benefits, and hire union workers. (Pl. Depo. at 67:4–21.) Krupinski testified that focusing this kind of negative attention on non-union companies is a powerful means of persuading them to change their practices. (*See id.* at 67:4–8.) Krupinski further testified that a successful rat or casket action generally requires "keep[ing] the line active as much as possible, and talk[ing] to people and [telling them] well developed stories, examples, and, basically, provid[ing the workers at a site] with knowledge about [the] industry, about the danger[s] they are facing" by working in substandard conditions, and how LIUNA can help them address those issues. (*Id.* at 92:12–19.) In short, rat and casket actions advance LEROF's core mission to "eliminate as many as possible non-union comparisons on the market" and increase LIUNA's market share. (Pl. Depo. at 24:17–18; Def. 56.1 ¶ 5.)

B. Procedural History

On February 10, 2015, Krupinski initiated this action by filing a Complaint asserting claims under the FLSA, NYLL, and the WTPA. (Doc. No. 1 ("Compl.").) The Complaint alleges that LEROF failed to pay Krupinski overtime compensation for work he performed as an Organizer each week in excess of forty hours in violation of the FLSA and the NYLL, and that LEROF failed to provide Krupinski with a certain form in violation of the WTPA. (*Id.* ¶¶ 13, 15, 17, 20–21.) Discovery closed on October 19, 2015 (*see* Doc. No. 15), and on December 5, 2015 LEROF moved for summary judgment on the ground that Krupinski was a bona fide administrative employee exempt from the overtime provisions of the FLSA and the NYLL (Doc. No. 26). On December 24, 2015, Krupinski filed a cross-motion for partial summary judgment on the issue of LEROF's liability. (Doc. No. 36.) Both motions were fully briefed by January 22, 2016. (Doc. Nos. 27, 36–38.)

II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving

3

party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

When cross-motions for summary judgment are filed, "the standard is the same as that for individual motions for summary judgment." *Nat. Res. Def. Council v. Evans*, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Id.* (citing *Morales*, 249 F.3d at 121).

III. DISCUSSION

A. FLSA Claim

The FLSA generally requires that employees be paid overtime for any work done in excess of forty hours per week, *see* 29 U.S.C. § 207(a)(1), but it carves out an exemption from the overtime requirement for "bona fide . . . administrative" employees, *id.* § 213(a)(1). The statute gives the Secretary of Labor "broad authority to 'defin[e] and delimi[t]' the scope of the exemption." *Auer v. Robbins*, 519 U.S. 452, 456 (1997) (quoting 29 U.S.C. § 213(a)(1)).[2] Under the Secretary's implementing regulations, an exempt administrative employee is one:

> (1) [who is] [c]ompensated on a salary or fee basis at a rate not less than $455 per week . . . exclusive of board, lodging or other facilities; (2) [w]hose primary duty is the performance of office or non-manual

---

[2] The Secretary's regulations "have the force of law, and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 559 (2d Cir. 2012) (quoting *Freeman v. Nat'l Broadcasting Co.*, 80 F.3d 78, 82 (2d Cir. 1996)); *see also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165 (2007) (observing that the FLSA "explicitly leaves gaps" that the Secretary has "the power to fill . . . through rules and regulations").

4

work directly related to the management or general business operations of the employer or the employer's customers; and (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. The employer bears the burden of showing that an employee is exempt from the overtime provision, *see Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2006), and the Supreme Court has held that exemptions to the FLSA "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit," *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *see also Bilyou*, 300 F.3d at 222 (same). As applied to Krupinski in this case, the parties dispute all three elements of the test for an exempt administrative employee. The Court will address each element in turn.

1. Salary Basis

The parties agree that Krupinski was paid on a salary basis from 2011 to 2014 (Def. 56.1 ¶¶ 13, 32, 35–38, 40–41; Pl. 56.1 Counter ¶¶ 13, 32, 35–38, 40–41), but they dispute whether he was paid on a salary basis in 2010 (Def. 56.1 ¶¶ 14, 16, 30–31, 34, 39; Pl. 56.1 Counter ¶¶ 14, 16, 30–31, 34, 39). Under the Secretary's regulations, an employee is paid on a salary basis if he "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of [his] compensation." 29 C.F.R. § 541.602(a). His pay must "not [be] subject to reduction because of variations in the quality or quantity of the work performed" and he "must receive the full salary for any week in which [he] performs any work without regard to the number of days or hours worked." *Id.* Importantly, however, "[a]n employer is not required to pay the full salary in the initial or terminal week of employment. Rather, an employer may pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment." *Id.* § 541.602(b)(6).

The record reflects that LEROF pays all Organizers a fixed bi-weekly salary. (Def. 56.1 ¶¶ 13–14.) Krupinski contends, however, that he was not compensated on a salary basis in 2010 because of three supposed pay discrepancies that occurred during the first three pay periods of his employment at LEROF. Specifically, on June 18, 2010, Krupinski was paid $2,095.36; on July 2, 2010, he was paid $2,619.20; and on July 16, 2010, he was paid $2,664.00. (Pl. Mem. at 14 (citing Doc. 34-1).) For each of the eleven remaining pay periods in 2010, Krupinski was paid $2,683.20. (Def. 56.1 ¶ 31, 34.) Krupinski argues that the pay discrepancies in the first three pay periods "demonstrate that in 2010 Krupinski's compensation in wages was subject to reduction because of variations in the quantity of work performed," and that he was therefore treated as an hourly rather than a salaried employee in 2010. (Pl. Mem. at 14–15.)

Krupinski is incorrect. The undisputed payroll statements in the record show that Krupinski was paid a bi-weekly salary, calculated by multiplying a forty-hour work week by a collectively bargained wage rate, from the beginning of his employment at LEROF. (Def. 56.1 ¶¶ 30–31.) The supposed pay discrepancies in the first three pay periods of his employment are easily explained. Krupinski's June 18, 2010 wages were simply pro-rated, as explicitly permitted by the Secretary's regulations, *see* 29 C.F.R. § 541.602(b)(6), since he started at LEROF

5

in the middle of the week.  (*See* Def. Reply at 7–8 (citing Def. 56.1 ¶ 30–31).)  Krupinski's July 2, 2010 wages reflected the then-current collectively bargained wage rate multiplied by a full pay period.  (*See* Def. 56.1 ¶¶ 30–31; *see also* Def. Reply at 8.)  On July 8, 2010, the collectively bargained wage rate increased (Def. 56.1 ¶ 31; *see also* Def. Reply at 8), meaning that all employees' salaries were calculated in accordance with the new rate.  Since the rate increase occurred three days into the new payroll period, employees' wages for that payroll period were calculated according to the old bargained rate for the first three days, and according to the new rate for all days thereafter.  (Def. 56.1 ¶ 31; *see also* Def. Reply at 8.)  Krupinski's July 16, 2010 wages thus reflected the rate increase that occurred three days into the payroll period.  (*See* Def. 56.1 ¶ 31.)  Krupinski's next paychecks, and all paychecks thereafter, reflected the rate increase multiplied by the full pay period.  (*See* Def. 56.1 ¶ 31.)

In light of this explanation, there is no basis in the record for Krupinski's contention that his pay in 2010 was subject to reduction for variations in the quality of work performed.  Accordingly, since the undisputed facts indicate that Krupinski was paid on a salary basis from the beginning of his employment at LEROF, the Court finds that the first element of the FLSA's administrative exemption test is satisfied.

## 2. Primary Duty

To establish the second element of the administrative exemption, LEROF must show that Krupinski's "primary duty" consisted of (a) "office or non-manual work" that was (b) "directly related to the management or general business operations of [LEROF] or [LEROF's] customers."  29 C.F.R. § 541.200(a)(2).  The Secretary's regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs" and add that "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  *Id.* § 541.700(a).  The regulations offer a nonexhaustive list of factors for courts to consider when determining an employee's primary duty, including the relative importance of exempt duties as compared with non-exempt duties and the amount of time spent performing exempt work.  *Id.*  The Court will address each sub-element in turn.

### a. Office or Non-Manual Work

The Secretary's regulations do not separately define "office or non-manual work," but they do specify that the overtime pay exemption does not apply to "manual laborers or other 'blue collar' workers who perform work involving repetitive operations with their hands, physical skill and energy," such as "non-management production-line employees and non-management employees in maintenance, construction and similar occupations."  29 C.F.R. § 541.3(a); *see also id.* (listing as further examples carpenters, electricians, mechanics, plumbers, construction works, and laborers).  Courts interpreting the Secretary's regulations have found that fieldwork may qualify as exempt non-manual work, *see Savage v. UNITE HERE*, No. 05-cv-10812 (LTS), 2008 WL 1790402, at *6 (S.D.N.Y. Apr. 17, 2008), and that exempt employees "can perform some manual work without losing exempt status," *id.* (quoting *Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 401 (6th Cir. 2004)).

The parties dispute whether Krupinski's duties as an Organizer consisted primarily of "office or non-manual work" as opposed to "manual work."  (*See* Pl. Mem. at 9; Def. Mem. at 10.)  Krupinski's testimony establishes that he spent the majority of his

6

time performing fieldwork – rat actions, casket actions, house calls, leafleting – and relatively little time doing traditional office work. (Def. 56.1 ¶¶ 43–44 (citing Pl. Depo. at 24:12–19); *see also* Doc. No. 30-2 at 6 (indicating that Krupinski's duties included "[o]rganizing rallies," "[c]ommunity organizing," "[h]ouse calling workers," "[i]nformation lines," "[c]hecking job sites").) The undisputed facts also establish that the purpose of Krupinski's fieldwork was to "[i]nform the laborer, local members, about what's going on when it comes to the construction market. Motivate them. Educate them. Train them. Whenever there is opportunity to do so fight for the rights for their . . . stability of their employment. . . . [B]asically, eliminate as many as possible non-union comparisons on the market." (Pl. Depo. at 24:11–18; *see also id.* at 25:7–8 (same).) The undisputed evidence in the record further shows that Krupinski's "day-to-day activities . . . centered on [his] ability to communicate with, recruit and motivate workers" and that his success as an Organizer "depended not on [his] manual dexterity or physical talents," but on his interpersonal skills and knack for identifying and developing target workers. *Savage*, 2008 WL 1790402, at *6. (*See* Pl. Depo. at 33:7–17 (Krupinski testifying that he and his co-workers would identify "potential candidates" who, "in our opinion," were "worth . . . follow[ing]" up on and who could "provide" the organizers with "more address[es] and . . . people . . . worth . . . talk[ing to] in order to organize [an] entire [non-unionized] company" and that this process was essentially "a campaign . . . to organize" such a company); Def. 56.1 ¶ 47 (Krupinski's work also involved "attend[ing] conferences to learn about the union's market share and develop the information necessary to inform union and non-union members in the course of his duties.").) In sum, the Court finds that Krupinski's fieldwork was "of a very different type than the work that the [Secretary's] regulations characterize as 'manual' in nature." *Savage*, 2008 WL 1790402, at *6 (listing Secretary's examples, including carpentry, plumbing, construction work); *see also Rincon v. Am. Fed'n of State, Cty., & Mun. Emps.*, No. 12-cv-4158 (MEJ), 2013 WL 4389460, at *18 (N.D. Cal. Aug. 13, 2013) ("Consistent with an interpretation of 'non-manual work' that includes work performed outside the office, courts have found that union organizers and business representatives working outside of an office or in the field can be exempt 'administrative' employees." (citing examples)), *aff'd*, 638 F. App'x 631 (9th Cir. 2016).

Krupinski strives mightily to denigrate his work and protests that his duties were primarily manual in nature because conducting rat actions required him to set up an inflatable rat, which "[s]ome days, . . . required constant adjustments and maintenance due to weather conditions, such as strong winds," and conducting casket actions required him to retrieve caskets from storage, load them in a van, and deliver them to jobsites. (Pl. Mem. at 9.) Krupinski adds that rat and casket actions required him to "[be] on [his] feet moving about while distributing fliers," duties that, like manual labor, involve "repetitive operations with the hands, physical skill, and . . . energy." (*Id.*) As noted earlier, however, "an exempt employee can perform some manual work without losing exempt status." *Savage*, 2008 WL 1790402, at *6. In this case, Krupinski's physical tasks were merely incidental to his primary, non-manual duty of organizing workers. Accordingly, the Court finds that these peripheral tasks, even if they were manual in nature, do not remove Krupinski from the scope of the FLSA's administrative employee exemption. *See id.* at *6 (finding that "[n]either the limited leafleting [that p]laintiff performed, nor [p]laintiff's

7

responsibility for collecting union cards render her ineligible under the exemption, as both tasks were related to her primary duty of organizing workers"); *Schaefer*, 358 F.3d at 402 (concluding that power plant technician's occasional manual tasks during inspections did not remove him from scope of administrative exemption).

In light of the foregoing discussion, the Court finds that LEROF has established, through Krupinski's own testimony and the undisputed facts in the record, that Krupinski's primary duty of organizing workers was non-manual in nature.

b. Work Directly Related to Management or General Business Operations

Having determined that Krupinski performed non-manual work as an Organizer, the Court must now consider whether Krupinski's primary duty was to perform "work directly related to the management or general business operations of [LEROF] or [LEROF's] customers." 29 C.F.R. § 541.201(a). "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* Examples of qualifying work include:

> [W]ork in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

*Id.* § 541.201(b). By contrast, examples of employees whose primary duty is not the performance of work directly related to the management or general business operations of the employer include:

> [P]olice officers, detectives, deputy sheriffs, . . . investigators, inspectors, correctional officers, . . . park rangers, fire fighters, . . . rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, *who perform work such as* preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; . . . interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

*Id.* § 541.3(b)(1) (emphasis added).

In determining whether an employee satisfies the "directly related" requirement, courts have sometimes focused on the distinction between "employees directly producing the good or service that is the primary output of a business," who are not exempt, and "employees performing general administrative work applicable to the running of any business," who are. *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009); *see also id.* ("[T]he 'essence' of an administrative job is that an administrative employee participates in 'the running of a business, and not merely . . . the day-to-day carrying out of its affairs.'") (quoting *Bratt v. Cty. of Los Angeles*, 912 F.2d 1066, 1070 (9th

8

Cir. 1990)). As a number of courts have observed, however, "the administration/production dichotomy is merely illustrative – unless the work falls squarely on the production side – and may be of limited assistance outside the manufacturing context." *Savage*, 2008 WL 1790402, at *7 (citing cases); *see also Rincon*, 2013 WL 4389460, at *19 (same); *Davis*, 587 F.3d at 532 ("[t]he line between administrative and production jobs is not [always] a clear one, particularly" where "the item being produced" is "an intangible service rather than a material good").

The present case illustrates the limited utility of the administration-production dichotomy in the modern service-industry context. If rat actions and other organizing activities are characterized as LEROF's main "product," then Organizers like Krupinski may seem analogous to employees on a manufacturing production line. *Cf. Webster v. Pub. Sch. Emps. of Wash., Inc.*, 247 F.3d 910, 916 (9th Cir. 2001) ("If we were to accept [plaintiff's] position and view the negotiation of agreements as the bargaining units' production, then any work – including that of a president or CEO – for a legal entity that addresses primarily management or administrative concerns . . . would be production."). If, as seems more accurate, rat actions and other organizing activities are characterized as functional services that LEROF – as LIUNA's recruiting, marketing, public relations, and advocacy arm – provides to LIUNA, then Organizers are more analogous to staff who "assist[] with the running or servicing of [a] business." *Final Rule Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22,122, 22,141 (Apr. 23, 2004). Since the Court does not find the administration/production dichotomy particularly useful in this case, it "will not strain its application to fit it to this set of facts." *Savage*, 2008 WL 1790402, at *7. Instead, the Court will focus on whether Krupinski "perform[ed] work directly related to assisting with the running or servicing of [LEROF's, and, by extension, LIUNA's] business." *Id.* (quoting 29 C.F.R. § 541.201(a)).

The undisputed facts establish that Krupinski's primary duty as an Organizer for LEROF was to represent and promote LIUNA and to organize and recruit non-union workers in order to increase LIUNA's membership and market share. Krupinski was sent to jobsites to inform the public about the hazards of non-union labor, to pressure companies into hiring union labor, and to persuade non-union construction workers to join LIUNA. (*See* Pl. Depo. at 29:7–8 (Krupinski acknowledging that his "job . . . every day" was to "get more workers organized" to "make the union stronger" and to "improve the market share"); *id.* at 28:2–21 (Krupinski testifying that as an organizer, his job responsibilities included "trying to organize" "non-union guys" by "telling them" about the "[b]enefits" of being a member of LIUNA and trying to convince them to join LIUNA); *id.* at 24:11–18 (Krupinski testifying that Organizers sought to "eliminate as many as possible non-union comparisons on the market"); Def. 56.1 ¶ 47 (Krupinski's duties included "attend[ing] conferences to learn about the union's market share").) Krupinski and other LEROF Organizers were the face of LIUNA to the public and to non-union workers. *See, e.g.*, *Schwind v. EW & Assocs.*, 357 F. Supp. 2d 691, 705–06 (S.D.N.Y. 2005) (finding representation of business to clients a relevant factor in determining "directly related" element of FLSA administrative exemption). Viewed in this light, Krupinski's duties resembled a number of those listed in the Secretary's regulations as

9

examples of work "directly related to management or general business operations." 29 C.F.R. § 541.201(b) (listing, among other examples, advertising, marketing, research, labor relations, and public relations). Altogether, Krupinski's work – participating in and helping to run LEROF's organizing campaigns – primarily contributed to the "running or servicing," *id.* § 541.201(a), of LEROF's "core mission," which is to "organize non-union workers to increase membership for the local unions and thus increase market share for LIUNA as a whole" (Def. 56.1 ¶ 5).

Courts in similar cases have found comparable duties sufficiently related to the "running or servicing" of a business to satisfy the administrative exemption's "directly related" requirement. In *Savage*, for example, Judge Swain found that the plaintiff's duties primarily related to the general operations of the defendant labor union's business where the plaintiff was a "staff organizer" for the defendant, her primary duty "was to represent and promote her employer" and "its goals to the community and customers," and her "day-to-day activities focused on increasing [the union's] membership and, through that, its bargaining strength." *Savage*, 2008 WL 1790402, at *8. Likewise, in *Rincon*, the court noted that "work related to 'servicing' the business includes 'advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control,'" and determined that the plaintiff, a union organizer whose mission was to "promote" the union and increase its membership base, had duties that primarily "related to the running and servicing of [the union's] business." *Rincon*, 2013 WL 4389460, at *19–20 (quoting *Final Rule*, 69 Fed. Reg. at 22138); *see also id.* at *20 (describing plaintiff's work as "focused on increasing [the union's] membership and, through that, its bargaining strength" by going "out into the community to speak with employees about [the union]," "visit[ing] workers at their homes and on job sites," and generally "assessing worker interest . . . in helping to build [the u]nion"); *see also Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 476–77 (S.D.N.Y. 2008) (finding that the plaintiffs, pharmaceutical representatives of the defendant, performed work "directly related to [the defendant's] management or business operations" where they represented the defendant and promoted its drugs in "meetings with medical providers," since "[t]he success" of the defendant's business "depends in part on the success of its pharmaceutical representatives in educating physicians about the [d]efendant's drugs" (alterations omitted)); *Copas v. E. Bay Mun. Util. Dist.*, 61 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999) (finding that a public relations officer's primary duties were "directly related to [the defendant's] management policies and general business operations," since they concerned the defendant's "community outreach and public information functions," which in turn were "part of [its] general business operations"); *Webster*, 247 F.3d at 917–18 (holding that the plaintiff, a "union field representative" employed by a labor union representing public school employees within various local "units," satisfied the second element of the FLSA's bona fide administrative employee exemption, since the "primary service goal of [these] units" was "to secure collective bargaining agreements" and the plaintiff's "primary duty [was] to negotiate [such] agreements" on behalf of the units).

Accordingly, based on the undisputed evidence in the record and for the reasons discussed above, the Court finds that Krupinski's primary duty was the performance of work "directly related to"

10

LEROF's "general business operations." 29 C.F.R. § 541.201(a). This finding, coupled with the Court's earlier determination that Krupinski's work was non-manual, compels the conclusion that Krupinski's "primary duty" was "the performance of . . . non-manual work directly related to . . . the general business operations of [LEROF]." *Id.* § 541.200(a)(2). Consequently, LEROF has established the second element of the administrative exemption test.

3. Exercise of Discretion and Independent Judgment in Matters of Significance

The Court now turns to the third and final element of the administrative exemption test, which asks whether Krupinski's primary duty involved the exercise of discretion with respect to matters of significance. *See* 29 C.F.R. § 541.202(a). The Secretary's regulations state in relevant part that:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed. The phrase "discretion and independent judgment" must be applied in light of all the facts involved in the particular employment situation[.]

*Id.* § 541.202(a)–(b).

Factors for courts to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, among others, "whether the employee carries out major assignments in conducting the operations of the business" and "whether the employee performs work that affects business operations to a substantial degree." *Id.* § 541.202(b) (emphasis added); *see also Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 429 (S.D.N.Y. 2013) (finding that another factor "illustrating that an employee does possess the requisite independence to satisfy the administrative exemption" is "an employee's discretion to set [his] own schedule and to tailor communications to a client's individual needs") (citation omitted). Importantly, "the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review." 29 C.F.R. § 541.202(c). Rather, "decisions made as a result of the exercise of discretion and independent judgment may [simply] consist of recommendations for action," and the requirement can be satisfied "even if [an employee's] decisions or recommendations are reviewed at a higher level." *Id.* However, "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures[,] or specific standards described in manuals or other sources" and "does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." 29 C.F.R. § 541.202(e).

The undisputed facts in this case establish that Krupinski identified target workers and potential candidates for house calls during organizing campaigns (Def. 56.1 ¶ 66; Pl. Depo. at 33:6–17); participated in those house calls (Def. 56.1 ¶ 67–69); used some sort of script when interacting with workers, but regularly went off-script at his discretion (Pl. Depo. at 35:20–36:10, 37:11–38:24); incorporated his personal history and background into discussions with workers (*id.* at 37:16–38:4, 92:12–19); identified and

11

reported on potential health code and other legal violations at non-union job sites (*id.* at 39:14–24); and varied his approach during organizing campaigns depending on the situation (*id.* at 77:5–25, 82:4–83:14). LEROF argues, based on these facts, that Krupinski's primary duty as an Organizer included the exercise of discretion and independent judgment with respect to matters of significance. (*See* Def. Mem. at 19–20; Def. Reply at 6.) Krupinski disputes LEROF's characterization and argues that any discretion Krupinski exercised was insignificant. (*See* Pl. Mem. at 11–13.) The Court finds that the undisputed facts favor LEROF's position.

In gauging workers' interest, deciding which workers to target for further persuasion, assessing how best to approach individual workers and members of the public, departing from his script when appropriate, and making recommendations to supervisors about where to conduct house calls and whether to report legal violations at jobsites, Krupinski undoubtedly compared and evaluated possible courses of conduct and acted or made decisions after considering the various possibilities. 29 C.F.R. § 541.202(a). Krupinski thus exercised "discretion and independent judgment." *Id.* The only real issue is whether his discretion reached "matters of significance." *Id.* The Secretary's regulations define that concept in especially broad terms, suggesting that what counts as a "matter of significance" may vary widely, depending on the circumstances. *See id.* ("The term 'matter of significance' refers to the level of importance or consequence of the work performed."). In the circumstances of this case, LEROF's labor organizing campaigns are plainly "matters of significance," since they constitute the bulk of its business activities and promote its core mission. LEROF's Organizers thus "carr[y] out major assignments in conducting the operations of [LEROF]" and "perform[] work that affects [LEROF's] business operations to a substantial degree." 29 C.F.R. § 541.202(b). (*See also* Def. 56.1 ¶ 9 ("The power of LEROF rests in the skills and talents of members who actively participate in organizing campaigns.").)

Because the undisputed facts establish that Krupinski exercised independent judgment in a variety of ways, and that he did so while carrying out major assignments in conducting the operations of LEROF, the Court concludes that Krupinski's primary duties included the exercise of discretion and independent judgment with respect to matters of significance. *See Savage*, 2008 WL 1790402, at *9–10 (finding the "discretion and independent judgment" element of the administrative exemption test met where plaintiff, a union organizer, "identified individuals who might be able to take leadership roles in . . . [union] campaign[s] and tested and cultivated their leadership ability" because such "successful organizing requires the ability to think on one's feet; a worker who closes a door on an organizer may not open it again"); *Rincon*, 2013 WL 4389460, at *20–22 (finding the "discretion and independent judgment" element met where union organizer exercised discretion while "organizing unrepresented workers and persuading those workers to choose [the union]," which "increase[s] [the union's] entire membership base and strengthen[s] its bargaining power" and so "could hardly be more significant to her employer"); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 13 (1st Cir. 1997) (marketing representatives who had discretion in choosing which agents to contact and what products to discuss with each agent exercised discretion and independent judgment).

In sum, the Court finds that Krupinski's primary duty involved the exercise of

discretion with respect to matters of significance, and that LEROF has established the third element of the FLSA's administrative exemption test. 29 C.F.R. § 541.200(a)(3). Since LEROF has also established the first two elements of the test, the Court finds that Krupinski was an exempt administrative employee as a matter of law, and that LEROF is entitled to summary judgment on Krupinski's FLSA claim. For the same reasons, the Court denies Krupinski's cross-motion for summary judgment on the FLSA claim.

### B. State Law Claims

In addition to his FLSA claim, Krupinski asserts two claims under New York state law, one for unpaid wages under the NYLL and one for statutory damages under the WTPA. LEROF does not address the NYLL claim, and addresses the WPTA claim only to recommend that the Court decline to exercise supplemental jurisdiction over that claim in the event that the Court dismisses Krupinski's FLSA claim.

Having granted summary judgment to LEROF on the sole federal claim in this action, the Court declines to exercise supplemental jurisdiction over Krupinski's state law claims. Of course, there is no dispute that the Court has original jurisdiction over Krupinski's FLSA claim, 28 U.S.C. § 1331, and that it may exercise supplemental jurisdiction over Krupinski's state law claims, which are sufficiently closely related to the FLSA claim as to form part of the same case or controversy, 28 U.S.C. § 1367(a). Nevertheless, a court may decline to exercise supplemental jurisdiction where the "court has dismissed all claims over which is has original jurisdiction." *Id.* § 1367(c)(3). In deciding whether to exercise supplemental jurisdiction in such a case, the court "balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Cohill*, 484 U.S. at 350 n.7); *see also Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated . . . , the federal court should ordinarily dismiss the state claims.").

This is the "usual case." Krupinski's federal law claim was eliminated before trial, "prior to the investment of significant judicial resources," and the Court "can discern no extraordinary inconvenience or inequity occasioned by permitting the [state] claims to be refiled in state court." *Kolari*, 455 F.3d at 122–24. Krupinski's state law claims, which the parties' briefs barely address, are not "closely tied to questions of federal policy," nor do they implicate the federal doctrine of preemption. *See Gibbs*, 383 U.S. at 727 (citing these as factors that may sometimes favor exercising supplemental jurisdiction); *see also Kolari*, 455 F.3d at 122–23 (holding that district court should have declined to exercise supplemental jurisdiction over state law claims with hazy connection to nebulous federal health policy concerns). Accordingly, since the Court has dismissed the claim over which it has original jurisdiction, and this case presents no extraordinary circumstances or federal policy concerns that might warrant retaining jurisdiction over the state law claims, the Court declines to exercise supplemental jurisdiction and dismisses Krupinski's state law claims without prejudice. *See Bhd. of Locomotive Eng'rs Div. 269 v. Long Island*

13

*R.R.*, 85 F.3d 35, 39 (2d Cir. 1996) (affirming district court's declining to exercise supplemental jurisdiction over state labor law claim after dismissing federal claim); *Volpe v. Am. Language Commc'n Ctr., Inc.*, No. 15-cv-06854 (GBD), 2016 WL 4131294, at *6 (S.D.N.Y. July 29, 2016) (declining to exercise supplemental jurisdiction over state law wage claims after dismissing federal FLSA claim); *Amparo v. Ink Point Tattoo*, No. 13-cv-07232 (LGS), 2015 WL 224360, at *4 (S.D.N.Y. Jan. 15, 2015) (same, at summary judgment stage); *Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 310 (E.D.N.Y. 2014) (same, at summary judgment stage); *Yang Li v. Ya Yi Cheng*, No. 10-cv-4664, 2012 WL 1004852, at *6 (E.D.N.Y. Mar. 23, 2012) (same, at summary judgment stage).

## IV. Conclusion

For the reasons set forth above, Defendant's motion is granted and Plaintiff's motion is denied. The Clerk of the Court is respectfully directed to terminate the motions pending at docket entries 26 and 32, enter judgment in favor of Defendant on Plaintiff's FLSA claim, dismiss without prejudice Plaintiff's remaining state law claims, and close this case.

SO ORDERED.

*[signature]*
RICHARD J. SULLIVAN
United States District Judge

Dated: September 30, 2016
 New York, New York

\*    \*    \*

Plaintiff is represented by Justin Clark, Matthew Blit, and Russell Moriarty of Levine & Blit PLLC, 350 Fifth Avenue, Suite 6902, New York, NY 10118.

Defendant is represented by Raymond Heineman and Brian Tremer of Kroll Heineman Carton, 99 Wood Avenue South, Iselm, NJ, 88389.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/16